Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000852
04-APR-2019
07:58 AM

NO. CAAP-16-0000852

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DARREN K. GRACE, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NOS. 15-1-259K and 16-1-263K)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Darren K. Grace (Grace) appeals from the "Findings of Fact, Conclusions of Law, and Order Denying in Part and Granting in Part Omnibus Motions of Darren K. Grace to Suppress Evidence and/or to Dismiss Indictment, Filed May 25, 2016," filed November 17, 2016, (Order) and from the "Judgment of Conviction and Sentence," filed November 18, 2016, (Judgment) in the Circuit Court of the Third Circuit (circuit court).[1]

The State of Hawaiʻi (State) presented a portion of its case to a jury before the circuit court declared a mistrial due to the State's failure to produce discovery under Hawaiʻi Rules of Penal Procedure Rule 16. Grace subsequently entered a conditional plea of no contest, pending appeal, in the consolidated cases Cr. No. 15-1-259K and Cr. No. 16-1-263K. In accordance with the plea, Grace was convicted in Cr. No. 15-1-

_____

[1] The Honorable Ronald Ibarra presided.

259K of Count 1: Unauthorized Control of Propelled Vehicle, in violation of Hawaii Revised Statutes (HRS) §§ 708-836(1) and/or 702-222 and/or 702-223, as amended; Count 2: Burglary in the First Degree, in violation of HRS § 708-810(1)(c), as amended; Count 3: Theft in the First Degree, in violation of HRS §§ 708-830(1) and 708-830.5(1)(b) and/or 702-222 and/or 702-223, as amended; Count 8: Robbery in the Second Degree (lesser included offense), in violation of HRS § 708-841, as amended; Counts 9 and 12: Unauthorized Entry Into Motor Vehicle in the First Degree, in violation of HRS §§ 708-836.5(1) and/or 702-222 and/or 702-223, as amended; Count 19: Criminal Trespass in the First Degree, in violation of HRS §§ 708-813(1)(b) and/or 702-222 and 702-223, as amended; and Count 20: Burglary in the Second Degree, in violation of HRS §§ 708-811(1) and 702-222 and/or 702-223, as amended. Grace was convicted in Cr. No. 16-1-263K of Count 1: Ownership or Possession Prohibited, in violation of HRS § 134-7(b), as amended; and Count 3: Place to Keep Pistol or Revolver, in violation of HRS § 134-25(a), as amended.

Pursuant to the conditional plea agreement, the circuit court sentenced Grace to one year of imprisonment for Count 19 of Cr. No. 15-1-259K, to run concurrent with the concurrent terms of five years for Counts 1, 9, 12, and 20 of Cr. No. 15-1-259K, which run consecutive to the concurrent terms of ten years for Counts 2, 3, and 8 of Cr. No. 15-1-259K and the concurrent terms of ten years for Counts 1 and 3 of Cr. No. 16-1-263K, for a total indeterminate prison term of fifteen years.

On appeal, Grace contends the circuit court erred in denying his Notice and Omnibus Motions of Darren K. Grace to Suppress Evidence and/or Dismiss Indictment, filed May 25, 2016, (Motion to Suppress) when it concluded in the Order: (1) that a backpack which police searched without a warrant was abandoned property in which Grace had no reasonable expectation of privacy; (2) that the police subsequently obtaining a warrant to search the backpack, based on the results of the initial search, was proper; and (3) that the Show-Up identification was not impermissibly suggestive and was sufficiently reliable.

2

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Grace's points of error as follows, and affirm.

(1) In his first point of error, Grace contends that the circuit court erred in denying his Motion to Suppress when it concluded the backpack, which police found and searched without a warrant near the scene of Grace's arrest, was abandoned property in which Grace had no reasonable expectation of privacy. Therefore, Grace argues, all evidence of items recovered in the warrantless search of the backpack, including photographic records, should have been suppressed.

The circuit court's findings of fact in the case are not challenged on appeal and thus are binding on appeal. See Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) (citations omitted). We review the circuit court's conclusions of law de novo under the right/wrong standard. State v. Adler, 108 Hawai'i 169, 174, 118 P.3d 652, 657 (2005).

> Article I, section 7 of the Hawai'i Constitution protects the right of the people to be free from "unreasonable searches, seizures and invasions of privacy." Haw. Const. art. I, § 7. The basic purpose of article I, section 7 "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." State v. Wallace, 80 Hawai'i 382, 392, 910 P.2d 695, 705 (1996) (quoting State v. Bonnell, 75 Haw. 124, 136, 856 P.2d 1265, 1272 (1993)). If an action taken by the government intrudes on an individual's reasonable expectation of privacy, such an intrusion is a "search" in a constitutional sense, and must be supported by a warrant, or an applicable exception to the warrant requirement, and probable cause in order to be constitutional. Bonnell, 75 Haw. at 137, 856 P.2d at 1273 ("It is well settled that an area in which an individual has a reasonable expectation of privacy is protected by article I, section 7 of the Hawaii Constitution and cannot be searched without a warrant.").

State v. Quiday, 141 Hawai'i 116, 122, 405 P.3d 552, 558 (2017).

> Under Hawai'i and federal constitutional law, when a defendant "abandons" property, he or she relinquishes any reasonable expectation of privacy so that a warrantless search and seizure by government officials does not violate the Fourth Amendment of the United States Constitution or Article I, Section 7 of the Hawai'i Constitution. See United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997)

3

> (quoting <u>United States v. Hoey</u>, 983 F.2d 890, 892-93 (8th Cir. 1993)); <u>State v. Ching</u>, 67 Haw. 107, 110, 678 P.2d 1088, 1092 (1984). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." <u>Tugwell</u>, 125 F.3d at 602 (citation and internal quotation marks omitted).

<u>State v. Kolia</u>, 116 Hawaii 29, 33-34, 169 P.3d 981, 985-86 (2007).

> [The Hawai'i Supreme Court] has adopted the two-part test that Justice Harlan articulated in his concurring opinion in <u>Katz v. United States</u>, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), to determine whether an individual has a reasonable expectation of privacy. <u>Bonnell</u>, 75 Haw. at 139, 856 P.2d at 1273-74. Under this test: "First, one must exhibit an actual, subjective expectation of privacy. Second, that expectation must be one that society would recognize as objectively reasonable." <u>Id.</u>, 856 P.2d at 1274 (quoting <u>State v. Biggar</u>, 68 Haw. 404, 407, 716 P.2d 493, 495 (1986)).

<u>Quiday</u>, 141 Hawai'i at 122, 405 P.3d at 558.

In determining whether a defendant had a reasonable expectation of privacy, Hawai'i courts consider "the nature of the place involved, the interest asserted by the defendant in the area searched, and the precautions taken by the defendant to insure his privacy." <u>Kolia</u>, 116 Hawai'i at 34, 169 P.3d at 986 (quoting <u>State v. Scanlan</u>, 65 Haw. 159, 161, 649 P.2d 737, 738 (1982)). "Every individual has expectations of privacy with regard to his person wherever he may go, be it a public park or a private place; yet this is not so with regard to places where an individual happens to be. The place must be of such a character as to give rise reasonably to these expectations of privacy." <u>State v. Dias</u>, 52 Haw. 100, 106-07, 470 P.2d 510, 514 (1970) (holding that the defendants had a reasonable expectation of privacy in a passageway, located on private property, because the group met and socialized there).

Further, "[w]hen an individual voluntarily abandons evidence, that individual loses any legitimate expectation of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private." <u>Kolia</u>, 116 Hawai'i at 34-35, 169 P.3d at 986-87 (citing <u>State v. Mahone</u>, 67 Haw. 644, 648, 701 P.2d 171, 175 (1985) (finding that the

4

defendant did not have a reasonable expectation of privacy when he disclaimed possessing or owning a bag containing drugs, which he left in a fellow defendant's apartment)). Abandonment is primarily a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." Mahone, 67 Haw. at 648, 701 P.2d at 175 (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)).

Considering the circumstances of this case, we conclude that Grace did not exhibit a subjective expectation of privacy, and any such expectation would not be one that society would recognize as objectively reasonable.

Grace's actions were not consistent with an actual, subjective, expectation of privacy. Here, the facts show that Grace discarded the backpack and attempted to distance himself from its contents. Grace was originally seen holding a backpack while crossing the path of a uniformed police officer who was in an unmarked, government subsidized police vehicle. Grace did not respond when the officer yelled, "Police, stop" and continued into some bushes where the officer lost track of him while securing his vehicle. Soon after, Grace appeared to the officer again, running along the top of a rock wall before disappearing into the fenced yard of a ground-floor condominium unit without the backpack. As the officer approached the fence, he saw Grace attempting to exit the property without the backpack and called him by name. Grace then cooperated and was placed under arrest by other officers on the scene.

While talking to Grace, the police officer encountered a man running with a knife--later identified as the occupant of the condominium unit whose fenced yard Grace had entered. A brief, initial search of the property by the police officer and the resident of the condominium did not reveal the presence of a backpack. A short time later, a second search by the police officer located a backpack in the bushes next to where Grace had been running along the rock wall. The occupant of the nearby condominium unit denied ownership of the backpack when asked. The backpack was lying on top of the bushes at about chest height

and was clearly visible. The circuit court expressly found that "[t]he backpack was visible within the bushes[,]" and that "[t]he backpack and bushes it was within were in a public place." A second police officer retrieved the bag without disturbing the bushes. Whether the bag was placed on the bushes during Grace's original run or was thrown there while Grace was in the fenced yard, the backpack's clearly visible location in a public place, to which Grace had no prior connection, does not illustrate a subjective expectation of privacy in the backpack.

Grace claims on appeal that he did not actively discard the backpack nor disclaim ownership, and that he "took care to conceal it within shrubbery from which he could easily recover it himself." Grace argues that an attempt at active concealment demonstrated his subjective expectation of privacy as distinguished from the defendant in Kolia who attempted several times to throw his bag into an inaccessible area. We disagree because, as in Kolia, Grace's discarding of the backpack before attempting to distance himself from it by going through a private, fenced yard indicates his intention not to be apprehended while in possession of its contents. Further, Grace presented no evidence at the hearing on the Motion to Suppress, at trial, or in the record on appeal of his intent to conceal the backpack. Thus, viewing all of the surrounding circumstances and Grace's actions, we conclude that Grace did not exhibit a subjective intent to maintain his privacy interest in the backpack.

Further, even if Grace had exhibited an expectation of privacy, that subjective expectation is not one which society would recognize as legitimate and reasonable due to "the nature of the place involved, the interest asserted by the defendant in the area searched, and the precautions taken by the defendant to insure his privacy." Kolia, 116 Hawai'i at 34, 169 P.3d at 986.

The nature of the place where the backpack was found, (clearly visible on top of some bushes in a public place) does not evidence an objectively reasonable expectation of privacy as the backpack could have easily been discovered by the residents,

groundskeeper, or others prior to Grace's return for it. Id. at 36, 169 P.3d at 988. Grace does not assert that he had any privacy interest in the area searched nor any social, ownership, or prior connection to the condominium or area of the property where he happened to be. Dias, 52 Haw. at 106, 470 P.2d at 514. There is no evidence in the record on appeal of any intent or attempt to conceal the backpack and assure Grace's privacy outside of the bare fact of the backpack's location: clearly visible on top of chest-high bushes in a public place with which Grace had no former connection. Kolia, 116 Hawaiʻi at 37, 169 P.3d at 989 (discussing the importance of intent and citing other jurisdictions for the proposition that actively discarding property in publicly accessible places during encounters with police constitutes abandonment). It is not objectively reasonable that such a location would convey an expectation of privacy on any found object.[2] See id. at 36, 169 P.3d at 988.

Thus, when Grace discarded his backpack on top of the bushes, he abandoned his expectation of privacy, and the circuit court properly denied Grace's Motion to Suppress the results of the warrantless search.

(2) Accordingly, because the initial warrantless search of the backpack was constitutionally proper, the evidentiary basis for the later obtained search warrant to conduct a second search of the backpack was appropriate and the circuit court properly denied Grace's Motion to Suppress the results of the second search of the backpack.

(3) In his third point of error, Grace contends that the circuit court erred in denying his Motion to Suppress when it concluded that the Show-Up identification was not impermissibly suggestive and was sufficiently reliable.

When the defendant challenges admissibility of eyewitness

---

[2] Grace contends on appeal that Hawaiʻi residents spend significant time outdoors and this has created an objectively reasonable expectation of privacy with regards to any sort of bag or personal container that is zipped, locked, buckled, or sealed in some way wherever it is found. We disagree; Grace's analysis overlooks the element of location. It must be objectively reasonable to expect privacy for a container in the location where the container is found. See id. at 34, 37, 169 P.3d at 986, 989.

> identification on the grounds of impermissibly suggestive pre-trial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of attention, and the elapsed time, the witness's identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury.

State v. Walton, 133 Hawaiʻi 66, 83, 324 P.3d 876, 893 (2014) (quoting State v. Araki, 82 Hawaiʻi 474, 484, 923 P.2d 891, 901 (1996)). "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification." State v. Kaneaiakala, NO. CAAP-16-0000647, 2017 WL 5151443, at *1 (Haw. App. Nov. 7, 2017) (SDO) (quoting State v. DeCenso, 5 Haw. App. 127, 132, 681 P.2d 573, 578 (1984) (internal quotation marks and citations omitted)). Thus, the appropriate remedy is a more specific jury instruction, at the request of the defense, to guide the jury in assessing the identification evidence. See State v. Cabinatan, 132 Hawaiʻi 63, 76-77, 319 P.3d 1071, 1084-85 (2014).

In this case, Grace was identified during a Show-Up identification in which the witness was driven in a police car and given a single opportunity to view Grace while Grace was seated on the ground next to a police officer. Such Show-Up identifications are inherently suggestive. Cabinatan, 132 Hawaiʻi at 76, 319 P.3d at 1085 (holding that an identification where the witness was driven by police to view a handcuffed suspect and where the witness admitted to potentially being influenced by prior police statements about the subject merited a specific jury instruction). However, as noted by the circuit court, a pretrial identification procedure must be impermissibly suggestive and, in view of the totality of the circumstances, the witness' identification must be deemed sufficiently unreliable to merit suppression.

In reviewing the totality of the circumstances to determine if there was a high likelihood of misidentification, we review the witness' opportunity to view the suspect at the time

8

of the crime, the degree of attention of the witness during the crime, the elapsed time between the crime and the identification, the accuracy of the witness' prior description, and the witness' certainty during the Show-Up identification. Walton, 133 Hawaiʻi at 83, 324 P.3d at 893 (quoting Araki, 82 Hawaiʻi at 484, 923 P.2d at 901).

We first consider the witness' opportunity to view the suspect at the time of the crime. Grace argues that the witness' view of the suspect was unreliable because the suspect's face was covered by a t-shirt for most of the encounter and because the incident at the truck only lasted for about fifteen seconds. We disagree.

At the hearing on the Motion to Suppress, the witness testified that the t-shirt only covered the suspect's head during the initial confrontation and that the t-shirt came off the suspect's head when the witness pursued the suspect. The witness testified that he could see and remember the suspect's face because it was not covered by the t-shirt during the confrontation when the suspect pointed a gun at the witness.[3] The witness provided a brief description of the suspect, and identified the suspect in the courtroom. The witness also testified that he was unable to provide a detailed description of the other suspects.

With regard to the witness' degree of attention, the witness was engaged in confronting and pursuing the suspect around a parking garage with which the witness was familiar. The witness was further focused by a gun pointed at his face by the suspect. See, e.g., State v. Pulse, 83 Hawaiʻi 229, 245, 925 P.2d 797, 813 (1996) (a witness threatened with a gun made a positive identification sufficient to provide probable cause for an arrest). Grace presents no evidence that the presence of the

---

[3] On July 10, 2017, Grace filed a motion to supplement the record on appeal with a DVD and two CDs that were exhibits to his Motion to Suppress and received into evidence during a hearing on the Motion to Suppress on July 25 and 28, 2016, and a "video disk" showing Appellant's physical appearance during the July 28, 2016 hearing. After viewing the recordings, we conclude that the contents of the requested videos do not provide any additional facts that demonstrate a high-likelihood of misidentification.

gun negatively affected the witness' attention or identification of the suspect.

With regard to the elapsed time between the crime and the identification, approximately one to two hours elapsed between the incident and when the witness was contacted to do the Show-Up identification. We note that "[t]here is no bright line indicating what length of time would render the identification suspect." In re Doe, 107 Hawai'i 439, 451, 114 P.3d 945, 957 (App. 2005). We have previously concluded that two and a half hours is not particularly significant. Kaneaiakala, 2017 WL 5151443, at *2 (citing Araki, 82 Hawai'i at 485-86, 923 P.2d at 902-03 (concluding that a seven-week period of time between the commission of the crime and the time of identification was "neither so short as to favor reliability nor too long to raise any serious doubts" (citations omitted)); and see Doe, 107 Hawai'i at 451, 114 P.3d at 957 (concluding that a period as brief as two hours does not appear to be particularly significant)).

With regard to the accuracy of the witness' description of Grace prior to the Show-Up identification, the witness correctly identified the clothing, gender, complexion, height, hair, and existence of an accent. The witness stated that he considered Grace's eyes and bridge of his nose to be distinctive, possibly because that is what was visible over the mask. The witness made no mention of Grace's distinctive face and neck tattoos. Another suspect at the scene, and not at the Show-Up, matched the same description, but without the tattoos. In his reply brief, Grace argues that such general descriptions are merely "inconclusive" and thus present a high likelihood of misidentification. We need not address whether such descriptions are conclusive, merely that they exhibit a degree of accuracy, the extent of which a jury is entitled to parse. See generally Kaneaiakala, 2017 WL 5151443, at *2-3 (finding that an incorrect description of ethnicity, corrected by a somewhat more accurate impression of the suspect as a whole, was sufficiently accurate to present to the jury).

10

Regarding the level of certainty exhibited during the Show-Up identification, the witness testified at the hearing on the Motion to Suppress that he was one hundred percent certain that the suspect presented during the Show-Up was the person he remembered. Grace argues that the existence of other suspects who matched the witness' general description, but who were not presented to the witness until after the witness stated that he was one hundred percent certain of the identification of the suspect, undermines the reliability of the identification. This alone does not meet Grace's burden to prove that there exists a likelihood of misidentification sufficiently high that the question should not be put to a jury.

Based on our consideration of the totality of the circumstances, we conclude that the witness' identification of Grace was sufficiently reliable and worthy of presentation to and consideration by the jury, subject to an appropriate jury instruction when requested by the defense.

Based on the foregoing, the "Findings of Fact, Conclusions of Law, and Order Denying in Part and Granting in Part Omnibus Motions of Darren K. Grace to Suppress Evidence and/or to Dismiss Indictment, Filed May 25, 2016," filed November 17, 2016, and the "Judgment of Conviction and Sentence," filed November 18, 2016, in the Circuit Court of the Third Circuit are affirmed.

DATED: Honolulu, Hawai'i, April 4, 2019.

On the briefs:

Terri L. Fujioka-Lilley
for Defendant-Appellant.

Kauanoe A. Jackson
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge